UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

KELLY JO SLOBUSZEWSKI,           )
                                 )
    Plaintiff                    )
                                 )
v.                               )    1:10-cv-00302-JAW
                                 )
SOCIAL SECURITY ADMINISTRATION   )
COMMISSIONER,                    )
                                 )
    Defendant                    )

**REPORT AND RECOMMENDED DECISION**

The Social Security Administration found that Kelly Jo Slobuszewski has severe mental impairments consisting of affective disorder/mood disorder, personality disorder/borderline personality disorder, and polysubstance addiction disorder and abuse, but retains the functional capacity to perform substantial gainful activity in occupations existing in significant numbers in the national economy, resulting in a denial of Slobuszewski's application for supplemental security income benefits under Title XVI of the Social Security Act. Slobuszewski commenced this civil action to obtain judicial review of the final administrative decision, alleging erroneous omission of additional mental impairments and a failure to account for all mental impairments in connection with the residual functional capacity finding.

**The Administrative Findings**

The Commissioner's final decision is the March 17, 2010, decision of Administrative Law Judge John F. Edwards because the Decision Review Board did not complete its review during the time allowed. Judge Edwards's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims. (Docs. Related to Admin.

Process, Doc. No. 8-2, R. 1, 7.[1])

At step 1 of the sequential evaluation process, the Judge found that Slobuszewski has not engaged in substantial gainful activity since November 1, 2007, the date of application. (Finding 1, R. 9.)

At step 2, the Judge found that Slobuszewski has the following severe mental impairments: affective disorder/mood disorder; personality disorder/borderline personality disorder; polysubstance addiction disorder and abuse. (Finding 2, R. 9.) The Judge found anxiety and attention deficit disorder to be non-severe impairments, reasoning that they only entered the record due to a June 2009 diagnosis by Dr. Timothy Rockcress, who later revised his diagnosis from an anxiety-related disorder to a mood disorder in early 2010. (R. 10.)

At step 3, the Judge found that this combination of impairments would not meet or equal any listing in the Commissioner's Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P. The Judge assessed mild limitations in activities of daily living; moderate limitations in social functioning; and moderate limitations in maintaining concentration, persistence, and pace. The Judge found no evidence of episodes of decompensation. (Finding 3, R. 10.)

Preliminary to further evaluation at steps 4 and 5, the Judge assessed Slobuszewski's residual functional capacity (RFC). The Judge found that Slobuszewski's combined impairments do not impose any exertional limitation, but do preclude interaction with the general public. (Finding 4, R. 12.) In reaching this conclusion, the Judge relied in part on psychiatric review techniques and mental residual functional capacity assessments performed by consulting experts (Exs. 3F, 4F, 7F, 8F, 10F) and in part on the hearing testimony of Dr. James Claiborne, who described the treatment provider's more restrictive assessment as overstated in light of the

---

[1] The Commissioner has consecutively paginated the entire administrative record ("R."), which has been filed on the Court's electronic docket in a series of attachments to docket entry 8.

objective evidence. (R. 14.)

Slobuszewski's vocational profile is as follows: she was born in 1982, making her a younger individual, has a high-school equivalent education, can communicate in English, and has no past relevant work or transferrable skill. (Findings 5-8, R. 14.) Given the absence of any past relevant work, the Judge bypassed step 4.

At step 5, the Judge found that Slobuszewski has the ability to engage in substantial gainful employment because her mental limitations "have little or no effect on the occupational base of unskilled work at all exertional levels," calling for a finding of "not disabled" by application of the "the framework of section 204.00 in the Medical-Vocational Guidelines." In support of this finding, the Judge cited Garcia-Martinez v. Barnhart, 111 Fed. Appx. 22 (1st Cir. Oct. 1, 2004) (unpublished), which he described as holding that a framework decision is permissible even when the preclusion of public interaction is coupled with a limitation to routine, repetitive work that involves no undue pressure. (Finding 9, R. 15.)

## Discussion of Plaintiff's Statement of Errors

Slobuszewski argues that the Judge erred in regard to the residual functional capacity finding by failing to account for the impact of anxiety and ADHD. (Statement of Errors at 1-6, Doc. No. 10.) At oral argument, the Commissioner said this was, at most, a harmless step-2 error because the Judge did consider the impact of these conditions in his discussion of the claimant's residual functional capacity. Slobuszewski also argues that the Judge erred in his evaluation of the "paragraph B" criteria at step 3 by finding only mild limitations in activities of daily living; that he erred in rejecting a treating source statement that Slobuszewski is unable to maintain attention and punctuality, or manage mood swings and irritability in the workplace; and that he erred in failing to translate a finding of moderate difficulties with concentration,

3

persistence, and pace into an appropriate residual functional capacity limitation. (Id. at 6-12.) The Commissioner relies on the opinions of Disability Determination Services consulting experts and the testifying medical expert, and argues that the Judge's residual functional capacity finding adequately accounts for moderate limitations in concentration, persistence, and pace because his reference to the Garcia-Martinez opinion implicitly indicates that a moderate concentration, persistence, and pace limitation would not preclude Slobuszewski from performing simple, routine work. Claimant's counsel objects that this is purely a post-hoc rationalization, because the Judge failed to discuss the issue in the decision.

The standard of review is whether substantial evidence supports the Commissioner's findings. 42 U.S.C. §§ 405(g), 1383(c)(3); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. Richardson v. Perales, 402 U.S. 389, 401 (1971); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). Given the presence of substantial evidence supporting the Judge's administrative findings, I recommend that the Court affirm.

### A. The Evidence

Ms. Slobuszewski has three children of her own (the third being born sometime in the course of the disability application and review process). She is also raising a niece subsequent to her sister's death. Both of her parents are also deceased. All of the impairments of record are mental. There is a history of alcohol and Vicodin abuse and evidence that such abuse is related

to one episode involving a stay at Acadia Hospital in October of 2007. In that month, Slobuszewski was admitted to Acadia Hospital for depression and suicidal ideation associated with estrangement from a boyfriend and family illnesses. Discharge diagnoses were bipolar disorder, personality disorder NOS (not otherwise specified), and a globalized assessment of functioning of 30 upon admission and 35 upon discharge. Providers at Acadia Hospital started Slobuszewski on Lithium for mood and Trazadone for insomnia. (Ex. 1F, R. 255-57.) Prior to this event, Slobuszewski had received treatment for depression consisting of various medications. (R. 262.) Allen Drucker, M. Ed., of Mayo Regional Hospital, provided Slobuszewski with some counseling treatment both prior to and after the hospital admission. Mr. Drucker's post-hospitalization notes reiterate the Acadia diagnoses and identify additional moderate to severe psychosocial stressors, including the death of Slobuszewski's mother in December 2007 and the impending death of her father as of June 2008. (Ex. 2F, R. 270; Ex. 6F, R. 333.) Although not reported to care providers at the time, Slobuszewski later divulged that this hospital stay was associated with substance abuse.

Slobuszewski filed for social security assistance in November 2007. She alleged an inability to be around people, racing thoughts and insomnia, but an ability to function within her home and to care for her children. Slobuszewski also described forgetfulness in relation to medications and appointments, but an ability to follow simple instructions. (Function Report, Ex. 7E, R. 211-16.)

An April 2008 progress note from Acadia Hospital reflects attempts at Suboxone and Methadone treatment (aborted due to adverse reactions) with an indication of opioid abuse and dependence. Acadia Hospital reinitiated the Lithium prescription, noting Slobuszewski's failure to take this already-prescribed medication over the past two months. Diagnoses found in the

5

latest Acadia Hospital progress note reassesses bipolar II and personality disorder, in addition to the substance abuse, as the treating diagnoses. Mood swings, irritability, and anger management issues are identified as the primary issues. (Ex. 5F, R. 289.) A March 2008 progress note from Mr. Drucker also identifies anger management and alcohol abuse, but describes a generally positive mental status exam. (Ex. 6F, R. 336.) Mr. Drucker reported in this timeframe that Slobuszewski was prevented from working 20 hours weekly due to mental health issues. (R. 335.) The Acadia Hospital records reflect an admission by Slobuszewski in January 2008 that she was using drugs off the street and that she "feels as though she is returning to previous substance use behaviors that led to her hospitalization a few months ago." (Ex. 5F, R. 312.) This evidence indicates the relationship between the earlier hospitalization and substance abuse.

The initial Disability Determination Services workup occurred in February of 2008, before the indication of substance abuse entered the record. It consists of a psychiatric review technique and a mental residual functional capacity assessment by Dr. Thomas Knox, Ph.D. Dr. Knox identified Slobuszewski's affective disorder (bipolar II) and personality disorder as severe, but he did not expect them to remain severe for 12 months. (Ex. 3F, R. 271.) Dr. Knox predicted gradual improvement with treatment and subsidence of symptoms following psychosocial disturbances. (R. 283.) He predicted a return to an ability to understand and remember simple instructions; to carry out simple tasks in a normal schedule; to interact appropriately with co-workers and supervisors, but not the general public; and to adapt to minor changes in routine. (Ex. 4F, R. 287.)

Disability Determination Services referred the file for further review in August 2008, after the substance abuse concern had entered the medical records. In her application of the psychiatric review technique, Dr. Brenda Sawyer, Ph.D., assessed a listing-level substance

addiction disorder based on evaluation of the listings for affective disorders and personality disorders (Ex. 7F, R. 370, 378), with marked limitation in activities of daily living, moderate in maintaining social functioning, marked in maintaining concentration, persistence, and pace, and at least one episode of decompensation (R. 380). Dr. Sawyer highlighted the fact that Slobuszewski was admitted to Acadia Hospital and that her hospitalization was associated with drug abuse. (R. 382.) In her mental residual functional capacity assessment, Dr. Sawyer assessed a non-severe level of mental impairment in the absence of drug abuse, explaining that the treatment records "show that when she is sober and compliant with medications, her impairment is non-severe." (Ex. 8F, R. 384, 396.)

Later in August 2008, Dr. Richard Wallingford, M.D., of Mayo Regional Hospital, performed a psychiatric evaluation and review for purposes of medication management. (Ex. 9F, R. 400.) Slobuszewski reported a period of sobriety following an unspecified intervention on the part of the Maine Department of Human Services in relation to her children. She reported significant Vicodin abuse commencing at age 18 and a lack of positive response to multiple prescribed mood medications. (R. 401.) The diagnoses from this evaluation were "mood disorder NOS, prior dx of bipolar d/o ADHD, combined type, h/o Opiate Dependence" and "possible BPD" (borderline personality disorder). (R. 403.) Dr. Wallingford called for discontinuance of the Lithium prescription and a trial of a "long acting methylphenidate to target her ADHD sxs" (prescribing Concerta). (Id.) Upon follow-up in September 2008, Dr. Wallingford found this Concerta trial unsuccessful, but thought that Lithium had proven efficacious for managing irritability and mood instability. He reiterated his diagnoses of bipolar NOS and ADHD, with possible borderline personality disorder. Slobuszewski reported that the Concerta triggered "flashbacks about a past trauma" not previously disclosed. (R. 398.)

7

Slobuszewski's mental health picture was proving somewhat protean during the social security review process. Progress notes from October 2008 through December 2008 reflect a series of medication trials, including Abilify, Geodon, Risperdal, and Seroquel, and also discontinuance of Lithium. Seroquel reportedly helped with symptoms of irritability, but not particularly with social withdrawal. Dr. Wallingford's notes in this period consistently indicate a follow-up on bipolar disorder NOS, without emphasizing other conditions such as ADHD. (Ex. 13F, R. 465-480.)

Disability Determination Services referred Slobuszewski's records for further review in December 2008. Dr. David Houston, Ph.D., performed a psychiatric review technique and a mental residual functional capacity assessment. Dr. Houston concluded that there was a need for a mental residual functional capacity assessment in connection with the diagnoses of affective disorder (bipolar II) and personality disorder. (Ex. 10F, R. 404, 407, 411.) He found only mild restrictions in activities of daily living, but moderate difficulties in maintaining social functioning and concentration, persistence, and pace. He also regarded the evidence of episodes of decompensation to be insufficient. (R. 414.) His notes reflect a review of the medical records including Dr. Wallingford's progress notes through September 2008. (R. 416.) Dr. Houston's checkbox summary conclusions identified a moderate limitation in the ability to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods, to maintain attendance and punctuality, to work in coordination with others without distraction, to complete the work day without interruptions from psychological-based symptoms, to interact with the general public, to accept instruction and respond appropriately to criticism from supervisors, to get along with coworkers and peers, and to responds appropriately to changes in the workplace. (R. 418-19.) However, his narrative

functional capacity assessment found an ability to understand and remember simple instructions, carry out simple tasks, to interact appropriately with co-workers and supervisors, and to adapt to simple changes. (R. 420.)

Subsequent to Dr. Houston's review, Dr. Wallingford continued his medication trials in 2009. Dr. Wallingford recommended physical exercise, with "a little as needed lorazepam." Slobuszewski reported abstinence from alcohol and drugs. (Ex. 13F, R. 463.) A Cymbalta trial (R. 462) and increased exercise proved helpful for mood and irritability by April 2009 (R. 449-50). The Cymbalta dosage was increased in May and Lorazepam was prescribed for use as needed for anxiety. (R. 447.) By May, it was reported that Slobuszewski's sister died and that Slobuszewski had assumed custody of her sister's daughter, adding to her childcare duties and introducing an additional period of bereavement. (R. 446.) Slobuszewski reported that the Cymbalta was providing assistance and that it would be good to have more Lorazepam for any breakout stress that should occur. (R. 446.)

In June of 2009, Dr. Timothy Rockress, MD, of Mayo Regional Hospital, performed another psychiatric evaluation, following a report by Slobuszewski that she was "feeling more depressed." (R. 444.) Slobuszewski reported to the doctor that she had experienced benefit from street use of Ritalin, which allegedly allowed her to calm down and better organize her thoughts. (Id.) Dr. Rockress called for application of the attention deficit hyperactivity rating scale at a later visit. (Id.) A July 3, 2009, psychiatric evaluation resulted in the introduction of an anxiety disorder (NOS) diagnosis, and findings consistent with someone having ADHD. Dr. Rockress began a trial of Strattera to target impulsivity and distractibility, with the idea that Strattera would replace Cymbalta if benefit was realized from its introduction. (R. 442-43.) A July 10, 2009, progress note indicated that the ADHD rating scale was completed and was strongly

9

suggestive of ADHD. Strattera proved beneficial as well. In Slobuszewski's words it "works great." (R. 439.) Dr. Rockress's assessment introduced ADHD (inattentive type) to the diagnoses. (R. 440.) Progress notes through September 2009 reflect continued reliance on Strattera, with some remaining problems with "affective regulation, especially in the context of family stress." (R. 432.) A November 2009 progress note indicates a rather stressed out patient, but relates that she is caring for four children ranging in age from infancy through 10 years. (R. 428.) A January 2010 report relates stress over a child's medication management. (R. 426.) Dr. Rockress introduced Vyvanse as an additional medication. (R. 427.) Slobuszewski found this additional drug to be very helpful with distractibility and impulsivity. (R. 424.)

Dr. Rockress completed a mental residual functional capacity assessment in January of 2010. In addition to multiple other limitations, he assessed that Slobuszewski would be unable to meet competitive standards in relation to maintaining attention for two hour blocks and maintaining regular attendance and punctuality. (Ex. 12F, R. 422.) His narrative comments are that Slobuszewski has "chronic problems with impulsivity, distractibility, and inattention," with "poor frustration tolerance." He further described "impulsive, difficult to control emotional regulation." He opined that she would be absent from work about two days per month. (R. 423.) Although Dr. Rockress described Slobuszewski's symptoms in explaining his assessment, he did not identify any specific diagnoses in his assessment.

The final expert opinion of record is that of Dr. James Claiborn, who appeared to testify at the February 2010 administrative hearing, where he was qualified as an expert in psychology. (R. 51.) Dr. Claiborn identified all of Dr. Rockress's diagnoses, including the most recent introduction of anxiety and ADHD, but testified that the ADHD diagnosis has an inadequate basis and is not established. (R. 54.) From there, the Judge walked Dr. Claiborn through the

remaining categories of the psychiatric review technique form. Dr. Claiborn identified only mild restrictions in activities of daily living, but assessed moderate limitations in social functioning and in concentration, persistence, and pace. These moderate assessments he based on mood swings and irritability, which would undermine social interaction and attention. (R. 55.) He opined that there is at most one episode of extended decompensation associated with the Acadia Hospital stay. (R. 56.) Dr. Claiborn opined that Slobuszewski would experience some limitations in mental functioning and assessed them as follows: difficulty with complex or multiple-step instructions, but an ability to understand and follow simple directions, including an ability to persist at basic, non-complex tasks throughout the day; difficulty interacting with the general public, but an ability to interact with co-workers and supervisors; difficulty adjusting to significant changes in the workplace, but an ability to handle occasional changes in day-to-day routine. (R. 56-57.) Dr. Claiborn disagreed with Dr. Rockress's assessment that Slobuszewski's mental impairment would prevent her from maintaining regular attendance and being punctual within the usually strict tolerances of a workplace, asserting that the longitudinal record did not support that conclusion. (R. 59.) On examination from claimant's hearing representative, Dr. Claiborn allowed that irritability and mood swings would be potentially problematic, but that the record does not contain sufficient evidence to predict a disabling level of social difficulty. (R. 60.)

B. Discussion

The Judge reached his finding of not disabled based on an application of the "framework" of the Guidelines. (R. 15.) The framework finding is not directly challenged and so will stand, unless Slobuszewski is successful in undermining the residual functional capacity finding upon which the step 5 decision depends. Residual functional capacity (RFC) amounts to "the most [a

11

claimant] can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a)(1). The measure of a claimant's RFC is a function of "all of [the] medically determinable impairments of which [the Commissioner is] aware," including those found not sufficiently severe for purposes of steps 2 and 3. Id. § 416.945(a)(2). In general, the claimant is responsible for providing the medical evidence needed to make the RFC finding, though the Commissioner has an obligation to facilitate the development of the record, such as by arranging for consultative examinations, as needed, and referring the medical records for expert review and assessment. Id. § 416.945(a)(3).

Because the RFC assessment requires consideration of both severe impairments and those impairments found not severe at earlier stages of the sequential evaluation process, and because it is the claimant's burden to demonstrate the degree of limitation resulting from her impairments, an error in describing a given impairment as non-severe at step 2 is generally deemed harmless, unless the claimant can demonstrate that the error proved outcome determinative at a later stage of the process. Bolduc v. Astrue, No. 09-cv-220-B-W, 2010 WL 276280, at *4 n.3, 2009 U.S. Dist. Lexis 122049, *10 n.3, aff'd, 2010 U.S. Dist. Lexis 4005 (D. Me. Jan. 19, 2010) (citing cases).

At step 2, the Commissioner must consider the severity of a claimant's impairments and it is the claimant's burden to prove the existence of a severe, medically determinable, physical or mental impairment or severe combination of impairments that are expected to result in death or have lasted or are expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909. To meet the severity requirement, the claimant must show that an impairment or combination of impairments amounts to more than a "slight abnormality" and has more than "a minimal effect on an individual's ability to work." McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1124 (1st Cir. 1986). This burden is a *de minimis* burden,

designed to do no more than screen out groundless claims. Id. at 1123. Only medical evidence may be used to support a finding that an impairment or combination of impairments is severe. 20 C.F.R. §§ 416.928; Social Security Ruling 85-28, 1985 SSR LEXIS 19, 1985 WL 56856.

Slobuszewski maintains that her diagnoses of ADHD and anxiety were erroneously treated as non-severe by the Judge. (Statement of Errors at 1-6.) The record demonstrates that, by the time of the administrative hearing, Dr. Rockress's evolving medication management regime was resolving around medications designed to treat predominantly ADHD symptoms, with some additional medications directed at mood management. The benefit associated with this medication, the results of the ADHD rating scale, and the course of psychiatric treatment support a finding that ADHD is an appropriate diagnostic label to include among Slobuszewski's mental impairments. The Judge's general recognition that these mental impairments are severe carries the ADHD label over the step 2 hurdle as much as it does the other diagnostic labels. The same might be said about the late-breaking diagnosis of anxiety disorder. However, Dr. Rockress's final progress note dropped the anxiety disorder from his Axis I assessment. Given his exploratory course of medication management, the fair inference is that this was purposeful. In any event, the ultimate question is whether the constellation of severe symptoms requires a residual functional capacity finding that is more limiting than the finding made by the Judge.

In the brief narrative comments on his mental RFC assessment, Dr. Rockress identified the following problems: "chronic problems with impulsivity, distractibility, and inattention"; "poor frustration tolerance"; and "impulsive, difficult to control emotional regulation." The correlation with the ADHD diagnosis is apparent from these comments. The correlation to anxiety is less clear. Like Dr. Rockress, Dr. Claiborne assessed that Slobuszewski would be limited in her work capacity due to mood swings and irritability. He also recognized that these

13

impairments would lead to distractibility and he assessed moderate social and concentration/attention difficulties. In light of the fact that Dr. Claiborne (and the Judge) identified those areas of mental impairment emphasized by Dr. Rockress, any error at step 2 involving artistic differences about diagnostic labels did not result in clear error in the residual functional capacity analysis. However, the Judge omitted from his RFC finding any limitation associated with moderate difficulties in maintaining concentration, persistence, and pace, without discussion, despite the fact that he had assessed moderate impairment in this area at step 3. At first blush, this appears to be a remand-worthy lapse. However, for reasons that follow, the Judge's ultimate determination of "not disabled" at step 5 implicitly incorporates a potential limitation to simple, routine instructions and tasks, which is in accord with substantial evidence of record.

At oral argument, the Commissioner asserted that the Judge implicitly found that Slobuszewski can perform simple, routine work, noting that the Judge pointedly cited the First Circuit's Garcia-Martinez opinion in support of his step 5 finding. Slobuszewski argues that this is unacceptable because there is no discussion of the issue in the Judge's decision. The Judge's cursory treatment is not ideal. However, a fulsome review of the record supplies substantial evidence of a residual functional capacity for simple, routine and repetitive work. That evidence consists of Dr. Claiborne's testimony, the assessments of the consulting experts, the longitudinal medical records (demonstrating the effectiveness of medication management and the significance of periods of bereavement and alcohol/drug abuse on symptomatology), and adequate performance of activities of daily living, despite rather significant demands associated with child rearing. The Judge based his ultimate residual functional capacity assessment on all of these factors (R. 12-14) and a reasonable person might well accept these evidentiary sources as

14

sufficient to support the finding and reject Dr. Rockress's contrary assessment of totally disabling mental impairments.

As for the moderate limitations in concentration, persistence, and pace, Dr. Houston and Dr. Claiborne assessed that such impairment would not prevent the performance of simple, routine and repetitive work. The mental residual functional capacity assessments of the other two consulting doctors support this conclusion. The Judge explicitly indicated his reliance on these experts (R. 13-14) and implicitly found an ability to perform simple, routine and repetitive work, subject to a restriction on interaction with the public, for he pointedly cited the <u>Garcia-Martinez</u> opinion in support of his step 5 finding. On this record, I find no reversible error in the Judge's ultimate application of the framework of the Guidelines to find the claimant "not disabled" under Title XVI. <u>Ortiz v. Sec'y of Health & Human Servs.</u>, 890 F.2d 520, 525-27 (1st Cir. 1989) (affirming framework decision where claimant was restricted to light work and has a non-exertional mental impairment limiting him to unskilled work, despite ambiguities in the ALJ's discussion, based on the medical evidence of record that made the finding supportable); <u>Garcia-Martinez v. Barnhart</u>, 111 Fed. Appx. 22, 23 (1st Cir. 2004) (not for publ'n) (affirming a framework decision based on ability to perform routine, repetitive work involving limited pressure and no interaction with the public, at all exertional levels); <u>Prescott v. SSA Comm'r</u>, No. 1:09-cv-00522-JAW, 2010 U.S. Dist. Lexis 112997, *31-34, 2010 WL 4259001 (D. Me. Mag. J. Rec. Dec. Oct. 21, 2010), <u>adopted</u> 2010 U.S. Dist. Lexis 124235 (Nov. 22, 2010) (affirming framework decision involving younger individual with a high school education and a residual functional capacity limited to light or sedentary work, only simple tasks, and no respiratory irritants).

Slobuszewski's remaining challenges involve a contention that the Judge erroneously

evaluated her ability to attend to her child-rearing responsibilities in assessing the paragraph B criteria of mental impairments at step 3 and erroneously discounted evidence related to attention span, attendance, and punctuality. (Statement of Errors at 6-10.) On the first issue, Slobuszewski cites progress notes indicating that she had some difficulty in this area of daily life. The Judge's partial reliance on Slobuszewski's ability to see to the needs of multiple children was not erroneous. The Judge did not say that it was easy or that there were no difficulties associated with child care, but rather that Slobuszewski appeared able to overcome those challenges adequately and still attend to multiple other activities of daily family life. Slobuszewski's relative ability in this area offers a degree of support to the finding that she has work capacity because it is the kind of evidence that a reasonable person might well consider as part of the overall picture. As for Dr. Rockress's views that Slobuszewski would be unable to maintain attention for extended durations or prove reliable for scheduling purposes, Dr. Claiborne assessed that the longitudinal record did not support these conclusions. (R. 59.) Slobuszewski argues that the Commissioner has an obligation to seek additional input from the treating physician under these circumstances, citing 20 C.F.R. § 404.1527(c)(3), but Dr. Claiborne did not indicate that *the evidence* was unclear. Rather, he opined that the evidence provided in the progress notes was not sufficient to support these additional limitations or Dr. Rockress's opinion that they would exist. The Commissioner's regulations "cannot reasonably be read to require an administrative law judge to contact a medical source whenever the administrative law judge would otherwise reject that source's opinion," Paradise v. Astrue, No. 1:10-cv-236-JAW, 2011 U.S. Dist. Lexis 35379, *18, 2011 WL 1298419, *6 (D. Me. Mar. 31, 2011) (Mag. J. Rec. Dec.) (discussing 20 C.F.R. § 416.912(e) ("recontacting medical sources")), adopted, 2011 U.S. Dist. Lexis 42575, 2011 WL 1481315 (Apr. 19, 2011). A medical expert can

16

testify that a treating source's opinion is not supported by sufficient evidence in the treatment records without triggering an obligation on the part of the administrative law judge to recontact the provider for additional information.

**Conclusion**

For the reasons set forth in the foregoing discussion, I RECOMMEND that the Court AFFIRM the Commissioner's final decision and enter judgment in favor of the Commissioner.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

July 7, 2011